We don't usually hold hearings on motions, but we were sufficiently concerned about the extent of what's going on in this matter that we thought that we should hear you both out. So, we'll hear from the appellant. This is a bail motion. Sure. We won't be able to talk about it. Your Honors, my name is Joseph O'Brien from Lackawanna County, representing the appellant, Dorothy Robinson. I should say that Judge Fuentes is participating by video. Dorothy Robinson was arrested and incarcerated in October 2007, pre-trial. She remains, to this date, in July of 2009, still incarcerated for 21 months. Let me ask you a question. I apologize. Can you give me your name one more time? Joseph O'Brien. O apostrophe B-R-I-E-N. Now, Mr. O'Brien, you're the fourth attorney in the Supreme Court. Folks who have been either appointed or retained by Ms. Robinson, you get the award as the survivor. The others last, I might count, the longest, about three months. And as the government points out, there is a series of motions. In fact, I think they claim it's on the order of 20 pre-trial motions that have been filed by your client. We're obligated to look at this court under Parker v. Wingard, right? Yes, sir. Okay. And under that standard, we have to make some judgment about who's responsible for delay in order to decide whether there's been a violation of the 7th Amendment right to scheme of trial, right? Yes, sir. So what I would like you to speak to directly, since we have a feel for the background, given the papers that both have filed, how is it that having filed by any count a very large number of pre-trial motions and having gone through multiple attorneys, it's appropriate for us to hear your client complain, wait a second, things are delayed? Well, the general reason is that the allegation of the United States that the delay was caused by my client is not supported by the record. I was appointed on May 5th, 2008. Three months later, in August, I filed three motions. A motion to dismiss for speedy trial, a motion for a severance, and a motion for pre-trial release. Those three motions were all denied by the court in October. It took about two months for the court to act on those. Okay. So your response to those three, there's 25 others. Well, I wasn't finished, Your Honor. Okay. Then, Your Honor, between the ‑‑ then there was a motion for a trial date filed in September that I filed with the judge to merely deny. Well, today was supposed to be the beginning of jury election, and we would not have had this motion, this hearing, if that had proceeded, and that didn't happen, right? That didn't happen, and, again, that was an order by the court. That was not your fault. That was not my fault. No, I've never agreed to or filed a motion for a continuance, and in the case for 15 months, and we have opposed every motion for continuance, we've been ready for trial since that time. Well, what is she charged with? She's charged with conspiracy involving controlled substances and three substantive offenses. Now, and you certainly don't dispute that that exposes her to an excess of 10 years imprisonment, right? We don't dispute that, no, Your Honor. Right, so the presumption under the 3142E3 kicks in, and to get pretrial release, you probably would have to rebut that presumption, right? Yes, Your Honor. The court has found, and now this is the seventh motion for reconsideration of the original decision for detainee that's on appeal before his bail is out. Five motions before I got involved. I filed a motion in August. It was denied in October. At that hearing, the judge made two statements. The judge said we're going to have jury selection in November, and the trial may not begin in early November, but it will begin shortly. Since that time, there have been seven or eight more continuances. I then filed the second motion for pretrial release in February, and six months later, when we had been promised a trial that had been denied, the second motion for pretrial release was denied in May, and we took an appeal to the court. So in the past 15 months, there have been two motions for pretrial release, and the reason there have been two is that after the first one was denied, the court said we're going to have the trial right away. That's one of the reasons I'm denying it. But what the judge also said specifically as a finding, that the presumption had not been rebutted, would we have to say that he was clearly erroneous in deciding that there were no conditions of release that would assure your client's appearance or the safety of the community in order for us to turn around a decision where he said, I've looked at it, and I don't think that that presumption has been rebutted? Well, I think you have a Danova review on bail cases. Now, I think there are cases from some other circuits that establish a clearly erroneous standard for review of factual findings, but I'm not sure whether that is factual or true findings. So I don't think that that's the standard on that particular issue. When is this trial going to happen? Well, the trial has been transferred. Finally, the case has now been transferred to Judge VanAske, and it's scheduled for trial on August 31st. Can you shed any light on why first Judge Muir and then Judge McClure decided that this is a case that ought to be passed to another judge? Well, could I shed any light and maintain my bar license? Maybe not. Well, that's okay. No, I don't want you to speculate. Hold on, Mr. O'Brien. Judge McClure handed five orders. Can you hear me? Yes. Okay. I want you to make sure that you don't say anything that's speculative. I'm not asking you to speculate and comment about your bar license makes me sensitive. Please don't do that. I just need to know whether there's something on the record in that regard, because if there is, I haven't seen it. Well, I would ask the Court to consider the orders handed down by the Court on January 13th, February 13th, April 13th, May 14th, and June 10th, in which the Court, in my view, requested motions for continuance when he said, if a motion for continuance is not filed, I'm going to withdraw from the case and assign it to another judge. If one is filed, then I'll act on it. Are there other defendants in this case? Many. Over ten. Can I put a question to Mr. O'Brien? Some are, some aren't. Can I put a question to Mr. O'Brien? Your Honor, there's a question in front of you. Oh, I'm sorry. Judge Sullivan, can you hear me all right? Yes, sir. Thank you. I wanted to ask Mr. O'Brien if your argument before us today is premised on a due process violation, or is it premised on a violation of Speedy Trial Act, or are you arguing essentially that the district court erred in concluding that Ms. Robinson cannot be released? Well, specifically the Speedy Trial Act issue is not before the court. We did move in the district court and it was denied, but I do believe that what you have here is these delays are denying us that right. But we weren't able to appeal the denial of that motion because it was an interlocutory issue. I think the court really should, you have to look at the totality of the circumstances here. You have. Let me ask you a point. Are you claiming a constitutional violation in terms of. That was really my question. I thought so. Is your claim a due process violation, or is it something else? Well, we are claiming that her rights are being violated by failing to release her under the circumstances of this case. Okay, what we have before us is not an appeal from the decisions of the district court which are interlocutory, but we have your motion for bail. Procedurally, that's what we have before us. And maybe I misunderstood that. Based on your motion in the district court and then your motion before us, I thought you were arguing a due process violation rather than a speedy trial act violation. But I think that's what Jake's point is and all the court has. Is the basis of your argument that she must be released on bail, that holding her for two years without trial amounts to a violation of her Sixth Amendment right to speedy trials? Yes. Okay. Now, your time is up. Let's hear from the government. Thank you. Thank you. Was there a rebuttal requested? No. Can you? No. He wouldn't have done that, Judge Fuentes. Let's just see. We may just decide this after the two arguments. Good morning, Your Honor. This is Assistant U.S. Attorney John J. McCann for the government. Mr. McCann, isn't this a major drug operation? How many defendants? What do we have here? At one point, we had 19 defendants. Your Honor, we're down with plea agreements. It looks like a maximum of four defendants will be left that have not signed plea agreements or already pled out, been sentenced, and one has been severed. So it looks like the trial scheduled for August 31st will go. There will be a maximum of probably three, maybe four defendants. I can shed some light on Judge Jordan's question as to why the case has been transferred. Judge Muir is 94 years old. He was old when I came on this court 30 years ago. I am the oldest assistant in the district by a long shot, and I am way younger than Judge Muir. Everybody is waiting until I turn it. He's moving his cases. I read them. It appears from what I've been told that he decided he was no longer going to take criminal trial. So the case was transferred to Judge McClure. Sadly, Judge McClure has been diagnosed with leukemia. Fortunately, he's undergoing a new treatment process that appears to be working, but he's not going to be taking any trial. So he transferred the case at the end of June, and it went to Judge Bonaski. Mr. McCann, the defendant's counsel tells us there have been, in his filing, 16 continuances, and that does not include the most recent one, so 17 trials, 8 set and passed, and that she has not in any instance agreed to those. Under those circumstances and given the current trial date, which I think is pegged for the end of August, that would put her in jail for nearly just a month shy of two years. Aren't we at the point where we ought to be getting concerned about the 16th? Judge, I've been concerned for quite a while. What the record shows is while the defense for the defendant, Robinson, may not have concurred in those motions, a number of those motions were coming when a couple of times there were lawyers being replaced. A motion in February at the same time a new lawyer was appointed. For her or for other defendants? For her. I think one other defendant or two other defendants that are on their second lawyer. A lot of these motions, now there have been five hearings. She would file a motion according to Judge McClure. I did not see it because the letters would be filed under seal, ex parte, and Judge McClure noted in one of his orders he was treating them as motions to go pro se. At the time this was occurring, there was also a motion by co-defendants to move the trial. I have no longer concurred in motions to move the trial. I made it clear any defendant that does not enter into a plea agreement, I'm prepared to try the case and have been knowing that for at least two months now and was prepared to go July 7th. I had all my witnesses lined up. It went to Judge Venasky. My understanding, Judge Venasky set the date of August 31st because that's the date his calendar was clear and he was prepared to try it. Can you comment on why the conditions of her release are not ad-hoc to protect the public? Yes, Your Honor. This defendant is head of the organization. Four of her children are under indictment with her. This individual, she has two prior felony drug convictions for drug distribution. The problem we have is she has a number of arrests. At the time, the charges would be simple assault, harassment. At the time the matters already went to trial or the preliminary hearings happened in state court, the witnesses developed amnesia or failed to show. There's a whole history of charges being dismissed. That's why this case ended up in federal court, plus of the vast quantities of drugs involved. It involves powder cocaine and substantial quantities of crack cocaine. This defendant, as I noted, is head of an organization comprised of a number of individuals, including a number of her children that have been distributing for a number of years in the Williamsport community, which is a community of about 30,000. Basically, witnesses have been afraid to testify. We have had to relocate a couple of our witnesses already because of threats against them. Judge Sloboda, can you hear me? Yes, go ahead. Yeah, I wondered if you could speak about the assurances that the case will go forward and what happens if indeed the trial doesn't go forward at the end of next month. In other words, how should we view the detention of Ms. Robinson if this case does not go forward at the end of August? Judge, I was advised by Judge McClure's clerk that the case was going to be reassigned to a judge who was available to try it, and that judge would set a date for trial. Based on that, I assume we are going August 31st. As a practical matter, if it doesn't go, I'm going to have a wife that's very upset because I canceled a vacation to try the case on that date. That's normally when we're on vacation. However, being realistic, we are prepared to try it. The government is prepared to go. If it doesn't go on that date, it will be because the defendant has moved it. The government will oppose that motion, and I can un-categorically say that in front of your honors now. I will oppose any motion for a continuance, absent ill health of myself, and I'm in pretty good health. If Judge Manasseh hasn't tried this, is there another judge, either a backup judge who can try this? That I can't answer. I don't know if there's been any contact with another judge or not, Your Honor. One last question. Mr. McCann, can you hear me? Yes, Judge. You mentioned threats against witnesses. Do you have any direct evidence or proof that the threats come from Ms. Robinson, or are they from other defendants? We've had one other defendant that has caused threats, but we have had a co-defendant and two witnesses advise us. Robinson's family also lives in Florida, and they travel back and forth. Mae Mae Robinson, she's known in the community and in the people as Mae Mae. Mae Mae is arranging for somebody to come up from Florida to take care of the government witnesses, and that quote has come from a co-defendant and two other potential government witnesses, and the quote has been the same all along. We're trying to verify that, but to be on the safe side, we've relocated witnesses. We've advised other government witnesses. If they wish to be relocated, we will relocate them. I don't want to mislead the court. They're not in a witness protection program. The U.S. Attorney's Office now has the ability to temporarily relocate witnesses, and that is what we have done in this case. In addition to... Oh, I'm sorry. Go ahead. Just to follow up, in addition to that information, is there any other evidence that she would pose a threat to the community if she is released? Just her past history, Your Honor, and the consistency of charges of witnesses either not showing for hearings and expressing a concern for their safety or developing amnesia, and this is all in the state court proceedings. This is the first time she's been in federal court. Okay. I'm speaking for myself here. If there is a further continuance in this, and we might expect there would be perhaps some concern from the defense about that, I would want to know with greater specificity who's responsible for which delays. That's something I think we would have to get to the bottom of, and there would be finger pointing on both sides, no doubt. But at this juncture, we've got two years' worth of delay, and neither side, speaking of safety generalities, helping us ferret out who's responsible for what would be important if we had to bring back her. I'll put you on notice. Can I point one thing out to you, Your Honor? Yes. In this hearing, there are people here for you. We have other sittings, yes. There have been 12 separate months. Twenty-one months have gone past since she was arrested. Twenty-eight motions. Twenty-eight motions. In October, December, January, April, May, August, there are 12 different months she filed motions. That stops the clock. There have been five separate hearings she has participated in where she, three of them to fire her. Let me ask her for the answer right now. Okay. All right. There's no rebuttal. Okay. No, there's no rebuttal. Thank you, Your Honor. Excuse me. We will deliberate, and you'll hear our result. What Judge Jordan says goes for the entire panel. If there is to be another delay, and that's assuming that she stays in jail, if there is to be another delay while she's in jail, we will want counsel to prepare a very specific outline of who's responsible for which delay by dates. We gave each side 10 minutes, and we've gone beyond that. If the defense counsel has anything further he wanted to say, then send us a letter. Send it by e-mail, and the clerk's office will get it to us. We're sitting all day. Thank you, Your Honor. Thank you, Your Honor. We will adjourn for three minutes because we have to get the third judge for the sitting that's going to begin in a few minutes. So at 10 o'clock. Judge Slovener? Yes. Judge Slovener, do you want me to remain here or speak? No, no, Julio, because Jordan and I are sitting today. Suppose we telephone you for conference. Okay? Sounds good. Yeah. Good. Thank you. Thank you. Thank you for appearing. The clerk's office is here. Thank you. I can't get out of the town, so I'll get out. Can we do something about the temperature in this room? All right. See if we can get some air in here. All right. All right. All right. All right. All right. All right. All right. All right. All right. All right.  All right.